UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-00388-GNS

SALISA LUSTER HARRISON                                                                    PLAINTIFF

v.

RICHARD WOOLRIDGE, et al.                                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss (DN 14, 18) and Defendants' Motion to Seal (DN 16). The motions are ripe for adjudication. For the reasons outlined below, Defendants' Motion to Seal is **GRANTED**, and Defendants' Motions to Dismiss are **GRANTED IN PART** and **DENIED IN PART**.

### I.     STATEMENT OF FACTS AND CLAIMS

The alleged events giving rise to this action began when Plaintiff Salisa Luster Harrison ("Harrison") failed to show up to work on April 29, 2008. (Compl. ¶¶ 2, 35, DN 1). Harrison's unexplained absence was uncharacteristic, and her coworkers grew concerned, prompting efforts to contact her. (Compl. ¶ 35). Unable to reach her by phone, Harrison's coworkers went to her apartment where they saw her car, but their repeated knocks on Harrison's door and windows went unheeded. (Compl. ¶ 35). Their inability to contact Harrison prompted the coworkers to call 911 to request an emergency welfare check. (Compl. ¶ 36). LMPD Dispatch received the coworkers' first call at approximately 11:12 AM on April 29, 2008. (Compl. ¶ 36).

Defendant Richard Woolridge ("Woolridge") was an LMPD police officer at the time[1] and responded to the coworkers' call, arriving at Harrison's apartment at approximately 11:27 AM. (Compl. ¶¶ 2, 37). The coworkers expressed their concerns, and Woolridge entered Harrison's apartment. (Compl. ¶ 37). Woolridge did not, however, allow Harrison's coworkers to follow him in, and he shut the front door behind him upon entry. (Compl. ¶ 37). Woolridge stayed in Harrison's apartment for around ten minutes. (Compl. ¶ 38). When he exited, Woolridge informed Harrison's coworkers that he had spoken with Harrison, that she had been crying because of a fight with her boyfriend, and that he had confirmed this with the boyfriend. (Compl. ¶ 38). The LMPD closed the matter at approximately 11:36 AM. (Compl. ¶ 39).

The coworkers placed a second call to the police at 11:45 AM. (Compl. ¶ 45). While waiting for an officer to arrive, the coworkers went to the building manager in an attempt to gain access to Harrison's apartment. (Compl. ¶ 45). Before the police arrived, the coworkers were able to enter Harrison's apartment and found the apartment in a state of disarray, apparently ransacked. (Compl. ¶ 45). Harrison was in her apartment, incoherent and unable to leave the couch, wearing blood-stained clothing, with facial bruising and blood in her eyes. (Compl. ¶ 46). Harrison was also exhibiting respiratory distress and was transported to the University of Louisville Hospital for treatment, including brain surgery. (Compl. ¶¶ 47-48). The hospital also photographed Harrison's injuries and facilitated a rape kit. (Compl. ¶ 48).

Brian Tucker ("Tucker") was employed as a detective for the LMPD and initiated a criminal investigation that day. (Compl. ¶¶ 3, 15, 49-50). According to Harrison, Tucker ignored crucial evidence in her apartment, including: failing to gather fingerprints; failing to recover,

---

[1] Many of Woolridge's actions are central to the allegations in the Complaint, but he is not a party to the current motions.

2

collect, and process a knife found in Harrison's bathroom; failing to interview apartment staff or any other contemporaneous witnesses; failing to collect DNA evidence; and failing to conduct any follow-up regarding the identity of the alleged boyfriend to whom Woolridge claimed to have spoken. (Compl. ¶¶ 52-53).

Tucker filed an incident report the following day. (Compl. ¶ 54). In that report, Tucker indicated he interviewed Harrison's coworkers at the hospital, a fact she claims is willfully untrue. (Compl. ¶ 54). Harrison alleges Tucker subsequently worked to ensure physical evidence went untested, and Woolridge, Tucker, and other Defendants conspired to have Harrison's rape kit removed from Kentucky's testing lab and placed instead into the rape kit backlog. (Compl. ¶ 55). Furthering the conspiracy, Woolridge, Tucker, and other Defendants falsely told Harrison and the prosecutor's office that the rape kit had been tested but returned a negative result. (Compl. ¶ 57).

Harrison alleges that on or about April 13, 2009, the LMPD closed her criminal case, but Harrison and her mother directed questions to LMPD Chief Robert C. White ("White") requesting information on the investigation and seeking to provide additional assistance to the police. (Compl. ¶¶ 58-59, 61). Harrison informed LMPD officials, including White, that she wished to lodge a complaint against Woolridge for willful abdication of his duties. (Compl. ¶ 62). Harrison later learned White had allowed Woolridge to take early retirement, so that filing a complaint against him would be futile. (Compl. ¶ 62). Harrison alleges she informed White and others of her wish to file a complaint long before Woolridge's retirement and alleges White conspired with other Defendants to conceal incriminating facts about Woolridge for over ten years. (Compl. ¶ 63).

Harrison claims she sought information about the attack and Woolridge's background from the LMPD via FOIA requests.[2] (Compl. ¶ 64). Harrison contends these requests were met with fraudulent concealment by LMPD officials Carey Klain ("Klain") and Dee Allen ("Allen"). (Compl. ¶¶ 18, 19, 64). Specifically, Klain and Allen informed Harrison that such materials did not exist, which Harrison claims is false and a violation of the Kentucky Open Records Act and LMPD policy. (Compl. ¶ 64). In 2012, Harrison and her mother reached out to White's successor, Steve Conrad ("Conrad"), asking him to use his authority to reopen the investigation of Harrison's attack. (Compl. ¶ 65). Conrad did not reopen the investigation, and Harrison alleges she continued making open records requests that were met with incomplete information. (Compl. ¶ 65).

In 2015, a highly-publicized statewide audit revealed that Kentucky had a significant backlog of untested rape kits. (Compl. ¶ 66). Harrison contends the publicity surrounding the audit alerted Defendants to the fact that Harrison's rape kit would eventually be found among the other untested rape kits. (Compl. ¶ 66). Defendants were thus prompted to reopen the investigation into Harrison's attack without contacting her, despite refusing her numerous prior requests. (Compl. ¶ 66). Harrison alleges this fact shows the existence of an institutional conspiracy within the LMPD. (Compl. ¶ 66).

Harrison further alleges that Special Victims Unit Coordinator Carolyn Nunn ("Nunn") falsely claimed Harrison's rape kit was being retested because of advancements in technology, and

---

[2] The Complaint references FOIA without any citation, but the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, does not apply to state and local governmental entities. *See Rimmer v. Holder*, 700 F.3d 246, 258-59 (6th Cir. 2012) ("FOIA is concerned only with shedding light on misconduct of the *federal* government, not *state* governments. As numerous sister circuits have noted, 'it is beyond question that FOIA applies only to federal and not to state agencies.'" (citations omitted)); *Buemi v. Lewis*, 51 F.3d 271, 1995 WL 149107, at *2 (6th Cir. 1995) ("The Act applies only to federal agencies, however, and not to cities and private individuals." (citations omitted)). The Court assumes Plaintiff is referring to requests made under the Kentucky Open Records Act, KRS 61.870-.884.

it had been fully tested in 2008-09. (Compl. ¶ 68). Harrison claims that Nunn told the Kentucky State Police that her rape kit had fallen through the cracks in a number of areas. (Compl. ¶ 69). Nunn also instructed other police officers not to share information with Harrison or her mother. (Compl. ¶ 69). Additionally, Harrison asserts that in January 2016, David Ray ("Ray") refused to test her rape kit in furtherance of the alleged conspiracy, with the hope that her attacker would not be identified. (Compl. ¶¶ 21, 70).

Sometime in 2016, Nunn was replaced by David Allen ("Allen"), who became Harrison's liaison with LMPD. (Compl. ¶¶ 23, 71). In November 2016, Whitney Collins ("Collins"), a supervisor with the Kentucky State Police laboratory, wrote to Allen seeking written authorization to retest Harrison's rape kit because the testing would fully consume the physical evidence. (Compl. ¶ 72). Harrison claims that a week after Collins wrote to Allen, Allen knowingly misrepresented to her he was still waiting on communications from the laboratory. (Compl. ¶ 73). Subsequently, Allen told Harrison that LMPD had received the communications from Kentucky State Police, that there was only enough physical evidence left for one final test, and that they were awaiting authorization for that test. (Compl. ¶ 73). On December 28, 2016, Allen wrote to Harrison, informing her that the test had occurred but did not reveal new information, but Harrison alleges the rape kit was not actually tested. (Compl. ¶¶ 75-76).

Harrison now asserts three counts against Defendants concerning their handling of the initial response to the crime and subsequent investigation. (Compl. ¶¶ 80-105). Count I alleges Defendants denied Harrison access to the courts in violation of her rights under the First Amendment. (Compl. ¶¶ 80-89). Count II alleges that Defendants denied Harrison the equal protection of the laws by treating her differently on the basis of her status as an African American.

(Compl. ¶¶ 90-96). Count III alleges civil conspiracy in violation of 42 U.S.C. § 1985. (Compl. ¶¶ 97-105).

## II. JURISDICTION

The Court has original jurisdiction over this matter under 28 U.S.C. § 1331.

## III. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P 12(b)(6). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. V. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claims

made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

## IV. DISCUSSION

### A. Defendants' Motions to Dismiss (DN 14, 18)

#### 1. *Qualified Immunity*

Defendants argue all officials are entitled to qualified immunity in this instance. (Defs.' Mem. Supp. Mot. Dismiss 10-11, DN 14-1 [hereinafter Defs.' Mot.]; Def.'s Mem. Supp. Mot. Dismiss 7-8, DN 18-1 [hereinafter White's Mot.]). "Kentucky provides qualified immunity from tort liability for public officers and employees for '(1) discretionary acts or functions . . . ; (2) in good faith; and (3) within the scope of the employee's authority.'" *Howell v.* Sanders, 668 F.3d 344, 355 (6th Cir. 2012) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)). Notably, Kentucky's qualified immunity standard requires that defendants prove the subjective element of good faith, an element the Supreme Court of the United States rejected from the federal analogue in *Harlow v. Fitzgerald*, 457 U.S. 800, 816-18 (1982). *Howell*, 668 F.3d at 355 (citing *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 474 (Ky. 2006)). "Moreover, it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). While qualified immunity is a threshold issue that should be determined at the earliest possible point, the fact-intensive nature of the inquiry makes it difficult for officials to claim qualified immunity before discovery. *Id.* at 433-34 (citations omitted).

Defendants' motions offer little more than a recitation of Kentucky's standard for qualified immunity followed by conclusory statements that the elements are satisfied. Without further proof

7

that can only be shown following discovery, it would be premature to dismiss these Defendants on qualified immunity grounds at this juncture. Kentucky's added component that officials must be acting in good faith intensifies an already fact-intensive inquiry. The Court concludes, therefore, that Defendants have not shown they are entitled to qualified immunity.

### 2. *Denial of Access to the Courts*

The Supreme Court has recognized the right of access to the courts, and a plaintiff therefore has a constitutional right to bring a non-frivolous claim. *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (collecting cases). The Sixth Circuit has noted that bringing such a claim involves "three components, only one of which is substantive." *Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013). First, 42 U.S.C. § 1983 provides a remedy to an individual deprived of a federal constitutional or statutory right, but Section 1983 creates no substantive rights itself. *Id.*; *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000). In the same way Section 1983 depends on the assertion of a constitutional or statutory right, a claim for denial of access to the courts requires the assertion of the deprivation of an underlying cause of action. *Flagg*, 715 F.3d at 173.

Claims of the denial of access to the courts can be forward-looking or backward-looking. *Id.* (citations omitted). In this case, Harrison asserts a backward-looking claim, where she alleges the government has destroyed or concealed evidence in a manner that bars the courthouse door and prevents her from finding redress for her injury. *Id.* The Sixth Circuit has articulated the elements of a backward-looking claim: "(1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) the underlying claim cannot be remedied by the state court; and (4) a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable." *Id.* at 174 (alterations omitted) (internal quotation marks omitted) (internal citations omitted) (citation omitted). A coverup that prevents a plaintiff from learning of

8

a potential claim until the expiration of a statute of limitations represents substantial prejudice. *See Swekel v. City of River Rouge*, 119 F.3d 1259, 1261-64 (6th Cir. 1997).

Defendants argue Harrison has failed to state a claim for denial of access to the courts because she never attempted to file an action in state court. (Defs.' Mot. 6). Defendants rely on this quote from *Swekel*: "Before filing an 'access to courts' claim, a plaintiff must make some attempt to gain access to the courts; otherwise, how is this court to assess whether such access was in fact 'effective' and 'meaningful'?" *Swekel*, 119 F.3d at 1264. The quote is misleading without context, however. *Swekel* concerned a coverup where police obstructed a woman from learning the identity of one of two drivers who hit and killed her husband. *Id.* at 1260. The coverup prevented the plaintiff from learning the second driver's identity until the statute of limitation had run for her to file a civil lawsuit.[3] *Id.* at 1261. The Sixth Circuit held that because the plaintiff failed to attempt filing suit at all, there was no way of knowing whether the obstruction would have held up against judicial action. *Id.* at 1264.

The facts alleged in the Complaint are sufficiently distinct from those in *Swekel* to make dismissal inappropriate. For instance, in *Swekel* the plaintiff had a suspicion as to the identity of the second driver—a suspicion she expressed to the police. *Id.* at 1261. She therefore could have filed suit against him and sought discovery. In this case, Harrison avers it was the LMPD's obstruction and wholesale failure to investigate that prevented her from having any idea whatsoever regarding the identity of her attacker. If Defendants did indeed conspire in the manner alleged by Harrison, one could draw a plausible inference that the conspiracy and refusal to investigate created an obstruction that prevented Plaintiff from finding redress for her injury in

---

[3] After the statute of limitations had run, the plaintiff learned the second driver was the son of a high-ranking police official. *Id.* at 1261.

state court.  *Swekel* would not extend to cover a situation where the plaintiff had no suspicion as to the identity of a wrongdoer.

Defendants have submitted forensic reports they claim show that Harrison's rape kit was tested three times, and because her allegations rest on the alleged failure to test the rape kit, the claims should be dismissed. (Defs.' Mot. 5; Defs.' Mot. Dismiss Ex. 1, DN 15).  Given the limited scope of a motion to dismiss, the Court will not consider the attached documents in ruling on Defendants' Motion.

White argues Harrison has failed to state a claim against him because she merely alleges that he failed to discipline Woolridge and instead allowed him to retire. (White's Mot. 3-4).  White argues that because there is no constitutional claim for failing to discipline an employee, the claim must be dismissed against him. (White's Mot. 4).  This oversimplifies Harrison's allegations.  As described in detail above, she alleges White intentionally allowed Woolridge to take early retirement to conceal evidence of Woolridge's wrongdoing from Harrison.  Accepted as true, this could permit a plausible inference that White's actions contributed to the alleged obstruction.  The Court concludes Harrison has stated a claim against White and the other named Defendants.

      3.     *Equal Protection Claim*

An individual may assert an equal protection claim as a class of one where "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000) (citations omitted).  In *Olech*, homeowners asserted that their municipality required them to grant the village a thirty-three-foot easement before the village would connect them to the municipal water supply.  *Id.* at 563.  The village only required a fifteen-foot easement from other villagers, and there was no reason for the discrepancy other than alleged animus toward

the plaintiffs who had in the past successfully sued the village. *Id.* The Supreme Court found this stated a claim for violation of the plaintiffs' rights under the Equal Protection Clause. *Id.* at 564-65.[4]

Notably, *Olech* was decided before the heightened pleading standard articulated in *Iqbal*. As evidenced from the Court's recitation of the facts above, however, the allegations in the Complaint in this case, while as of yet unproven, are extensive and detailed and satisfy the heightened standard.

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Sioux City Bridge Co. v. Dakota Cty.*, 260 U.S. 441, 445 (1923) (quoting *Sunday Lake Iron Co. v. Wakefield Twp.*, 247 U.S. 350, 352 (1918)). Accepted as true, Harrison paints a picture of police conduct that deprived her of equal protection. Repeatedly ignoring open records requests, allowing an officer to retire rather than expose potential misconduct in the handling of Harrison's attack, and making false statements about the status of her rape kit, when read as a whole, permit the inference that her individual case was treated differently without a rational basis. The claim will not be dismissed.

### 4. *Civil Conspiracy and Race-Based Equal Protection Claims*

#### a. **Civil Conspiracy**

To state a claim under 42 U.S.C. § 1985, a plaintiff must show:

> (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person

---

[4] The Court will address Plaintiff's race-based equal protection claim later in this opinion.

or property, or a deprivation of any right or privilege of a citizen of the United States.

*Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994) (citation omitted). To prevail on this claim, a plaintiff must also show the conspiracy was the result of "a class-based animus." *Id.* (citation omitted).

In *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the Sixth Circuit considered a Section 1985 claim where the complaint stated a substantively identical conclusory allegation of racial animus. *Id*. at 912-13. There, the plaintiff alleged that "[d]efendants' motives were racially based [and] supported by animosity toward plaintiff." *Id.* at 913 (alterations in original) (internal quotation marks omitted). The Court held that "a complaint that includes conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief." *Id.* (citing *Iqbal*, 556 U.S. at 678-79).

The Court has carefully reviewed Harrison's factual allegations. Beyond conclusory statements when outlining the counts asserted, Harrison has not identified a single fact that allows for a plausible inference that the alleged misconduct was racially motivated. *See Iqbal*, 556 U.S. at 678. She alleges when stating this count that she was treated differently because she is African American. (Compl. ¶ 100). She also alleges that, in general, the LMPD affords less attention to the complaints of crimes by African Americans than to those of white citizens. (Compl. ¶ 99). Finally, Harrison states that Defendants conspired to protect Woolridge, whose racial animus motivated him to withhold assistance from her during the initial welfare check. (Compl. ¶ 101).

Thus, while Harrison offers multiple allegations of racial animus, none of them alleges any specific facts to support the conclusion. The Court therefore concludes the Section 1985 claim must be dismissed. *See also Anthony v. Ranger*, No. 08-CV-11436-DT, 2010 WL 1268031, at *13 (E.D. Mich. Mar. 30, 2010) (dismissing a Section 1985 claim where plaintiff failed to allege

specific facts to support claim of racial or class-based animus); *Phifer v. City of Grand Rapids*, 657 F. Supp. 2d 867, 876 (W.D. Mich. 2009) (same); *Lea v. U.S. Dep't of Agric.*, No. 1:10-cv-00029-JHM, 2011 WL 182698, at *5-6 (W.D. Ky. Jan. 19, 2011) (same).

### b. Race-Based Equal Protection Claim

The lack of specific factual allegations that dooms Harrison's Section 1985 claim likewise requires dismissal of the race-based equal protection claim as well. A plaintiff asserting an equal protection claim under a theory of racial discrimination can either allege direct evidence of discrimination or state a claim under the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011).

Harrison has failed to allege any facts to support a claim of race-based discrimination. As discussed above with respect to the Section 1985 claim, conclusory allegations cannot sustain an equal protection challenge. *Gibbs v. Skytta*, No. 2:18-cv-139, 2018 WL 6321559, at *9 (W.D. Mich. Dec. 4, 2018) ("The mere fact that Plaintiff and these Defendants have different racial backgrounds is not sufficient to plausibly suggest that their actions were motivated by animus toward Plaintiff's race."). Therefore, the race-based equal protection claim is dismissed.

### 5. *Statute of Limitations*

Defendants argue Harrison's claims are outside the statute of limitations. (Defs.' Mot. 9-10). District Courts in this Circuit routinely hold that arguments concerning the accrual of claims for purposes of determining the statute of limitations are factual in nature and therefore inappropriate for resolution on a motion to dismiss. *In re EveryWare Glob., Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 863 (S.D. Ohio 2016) (citing *In re Direct Gen. Corp., Sec. Litig.*, 398 F. Supp.2d 888, 897 (M.D. Tenn. 2005); *Bovee v. Coopers & Lybrand*, 320 F. Supp. 2d 646, 656 (S.D. Ohio

2004); *In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581, 601-02 (N.D. Ohio 2004)). The Court agrees and will therefore not dismiss this case on the basis of statute of limitations.

### B. <u>Defendants' Motion to Seal (DN 16)</u>

Defendants also move to seal document filed at DN 15. (Defs.' Mot. Seal, DN 16). Harrison has not objected. Accordingly, the Court will grant the motion.

### V. <u>CONCLUSION</u>

For the reasons stated above, **IT IS ORDERED** as follows:

1. Defendants' Motions to Dismiss (DN 14, 18) are **GRANTED IN PART** and **DENIED IN PART**. As to Defendants Brian Tucker, Michael Sullivan, Steve Conrad, Dee Allen, Carey Klain, David Ray, David Allen, Carolyn Nunn, and Robert White, the race-based equal protection portion of Count II is dismissed; and as to the above-named Defendants, Count III is dismissed in full.

2. Defendants' Motion to Seal (DN 16) is **GRANTED**.

*[signature]*

Greg N. Stivers, Chief Judge
United States District Court

June 12, 2019

cc: counsel of record