UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-00388-GNS-LLK

SALISTA LUSTER HARRISON                                                            PLAINTIFF

v.

RICK WOOLRIDGE, et al.                                                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Leave to File a Second Amended Complaint (DN 74) and Defendants' Motions to Dismiss (DNs 55, 61, 62, 63, 64, 65). The motions are ripe for adjudication. For the reasons that follow, Plaintiff's motion is **GRANTED**, and Defendants' motions are **DENIED**.

**I.      BACKGROUND**

On April 27, 2008, Plaintiff Salista Luster Harrison ("Harrison") was assaulted in her home. (First Am. Compl. ¶ 38, DN 57). Concerned about Harrison's failure to show up for work, Harrison's co-workers called the Louisville Metro Police Department ("LMPD") on April 29, 2008. (First Am. Compl. ¶ 39). Two LMPD officers, one of them being Defendant Rick Woolridge ("Woolridge"), responded to the call. (First Am. Compl. ¶¶ 14, 39). After entering Harrison's apartment and speaking with her and her alleged boyfriend that was also inside, Woolridge told the coworkers that "everything is fine" and that Harrison was upset because of a fight with her boyfriend. (First Am. Compl. ¶¶ 40-45). Unsatisfied by Woolridge's response, Harrison's coworkers gained access to Harrison's apartment shortly after Woolridge left and found

1

Harrison lying motionless on her couch in bloodstained clothing. (First Am. Compl. ¶¶ 53-54). Medical personnel determined that Harrison had been sexually assaulted and suffered serious injuries, including a traumatic brain injury. (First Am. Compl. ¶¶ 55-56). The next day, LMPD initiated a criminal investigation into Harrison's assault. (First Am. Compl. ¶ 58).

Unsatisfied with LMPD's efforts to resolve her case, Harrison discussed her assault with then LMPD Chief of Police Robert White ("White"). (First Am. Compl. ¶¶ 17, 82). Toward the end of 2008, Harrison told LMPD, including White, that she wished to file a citizen complaint against Woolridge for the willful abdication of his duties on April 29. (First Am. Compl. ¶ 83). LMPD informed Harrison that her complaint could not be made over the telephone and she would therefore need to travel to Louisville, despite having moved back to her hometown of Little Rock, Arkansas, for medical treatment. (First Am. Compl. ¶ 83). Harrison was also told that she had through the end of February 2009 to make her complaint against Woolridge. (First Am. Compl. ¶ 83). Upon traveling to Louisville that month, however, Harrison was told that Woolridge was allowed an early retirement in January and, therefore, filing a citizen complaint would be pointless. (First Am. Compl. ¶ 83).

In 2009 and 2010, Harrison and her mother, Cheryl Ellis ("Ellis"), made open record requests for information and evidence related to the attack and investigation. (First Am. Compl. ¶ 85). Harrison alleges that they received incomplete responses and that, specifically, Defendants LMPD employees Dee Allen ("Allen") and Carey Klain ("Klain") attempted to fraudulently conceal responsive investigation materials. (First Am. Compl. ¶ 85). After continuing to investigate her case, in April 2012, Ellis contacted the newly appointed LMPD Chief of Police Steve Conrad ("Conrad") in an attempt to get Conrad to reopen Harrison's case, which had been

closed on April 13, 2009. (First Am. Compl. ¶ 80). Conrad did not reopen Harrison's case. (First Am. Compl. ¶ 86).

In 2015, a statewide audit revealed that Kentucky had a backlog of over 3000 untested rape kits. (First Am. Compl. ¶ 87). Harrison alleges LMPD finally reopened her case only in response to the audit. (First Am. Compl. ¶ 87). When Ellis learned of the rape kit backlog through the audit, she communicated with LMPD about identifying the victims associated with the backlog, eventually determining that the untested rape kits included Harrison's. (First Am. Compl. ¶¶ 88-90). In January 2016, Defendant LMPD Officer David Ray ("Ray") was instructed to authorize testing of Harrison's rape kit, which Ray refused to do. (First Am. Compl. ¶¶ 22, 91).

Harrison brought this action against the aforementioned Defendants, and others, alleging essentially a conspiracy on the part of the defendants to deprive her of her purported right to seek vindication against her attacker and Woolridge. (First Am. Compl. ¶¶ 98-99). Specifically, Harrison asserts Section 1983 claims against the aforementioned Defendants for: (1) violations of her constitutional rights of access to the courts and equal protection; (2) a 42 U.S.C. § 1985(3) claim for gender-based civil conspiracy; and (3) *Monell* claims[1] against White and Conrad. (First Am. Compl. ¶¶ 104-138). Woolridge, Conrad, Allen, Klain, Ray, and White have all filed motions to dismiss. (Woolridge Mot. Partial Dismiss, DN 55; Conrad Mot. Dismiss, DN 61; Allen Mot. Dismiss, DN 62; Klain Mot. Dismiss, DN 63, Ray Mot. Dismiss, DN 64; White Mot. Dismiss, DN 65). Harrison has filed a motion for leave to file a second amended complaint. (Pl.'s Mot. Leave File Second Am. Compl., DN 74).

---

[1] *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy of custom . . . inflicts the jury that the government as an entity is responsible under § 1983.").

## II.     JURISDICTION

Subject matter jurisdiction is afforded over this matter through federal question jurisdiction.  *See* 28 U.S.C. §§ 1331.

## III.     STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted).  "But the district court need not accept a bare assertion of legal conclusions."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citation omitted).

To survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (internal quotation marks omitted) (citation omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief."  *Southfield*

*Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

## IV.   DISCUSSION

### A.   Woolridge's Motion to Dismiss

Harrison filed her initial Complaint on June 19, 2018 and named Woolridge as a defendant. (Compl. 1, DN 1).  Before Woolridge was served, however, some of the other Defendants in this case moved to dismiss Harrison's race-based Section 1985(3) and equal protection claims, which this Court granted on June 12, 2019. (Mem. Op. & Order 11-13, DN 26).  Woolridge was then properly served on December 20, 2019, and filed the instant motion to partially dismiss on January 8, 2020. (Summons, DN 51; Woolridge Mot. Partial Dismiss 1-2).  In his motion, Woolridge simply requests that the Court dismiss the same claims against him as it did with respect to the other Defendants.

Woolridge's motion, however, has since become moot because of Harrison's filing of a First Amended Complaint, in which she does not assert any race-based Section 1985(3) or equal protection claims, instead making sex-based claims. (First Am. Compl. ¶¶ 117-32).  A "[p]laintiff's amended complaint super[s]edes the original complaint, thus making the motion to dismiss the original complaint moot." *Ky. Press Ass'n, Inc. v. Kentucky*, 355 F. Supp. 2d. 853, 857 (E.D. Ky. 2005) (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000)).  Harrison does not even assert race-based Section 1985(3) or equal protection claims in her First Amended Complaint, so Woolridge's motion to dismiss will be denied as moot because the claims he wishes to dismiss no longer exist.

### B. Remaining Defendants' Motions to Dismiss and Harrison's Motion for Leave to File Second Amended Complaint

Although Conrad, Allen, Klain, Ray, and White (collectively "Defendants") have filed separate motions to dismiss, their motions essentially make the same arguments and differ only with respect to the facts that Harrison has pleaded against each defendant individually. *See* (Conrad Mem. Supp. Mot. Dismiss 1-9, DN 61-1; Allen Mem. Supp. Mot. Dismiss 1-8, DN 62-1; Klain Mem. Supp. Mot. Dismiss 1-8, DN 63-1; Ray Mem. Supp. Mot. Dismiss 1-8, DN 64-1; White Mem. Supp. Mot. Dismiss 1-9, DN 65-1). These same Defendants also previously filed motions to dismiss Harrison's initial Complaint and now attempt to resurrect similar arguments that were rejected by this Court in ruling on those motions. *Compare* (Conrad Mem. Supp. Mot. Dismiss 1-9; Allen Mem. Supp. Mot. Dismiss 1-8; Klain Mem. Supp. Mot. Dismiss 1-8; Ray Mem. Supp. Mot. Dismiss 1-8; White Mem. Supp. Mot. Dismiss 1-9), *with* Defs.' Mem. Support Mot. Dismiss 1-12, DN 14-1; Def.'s Mem. Supp. Mot. Dismiss 1-8, DN 18-1); *see* (Mem. Op. & Order 1-14).

#### 1. *Qualified Immunity*

Defendants allege that they are entitled to qualified immunity on all of Harrison's claims. (Conrad Mem. Supp. Mot. Dismiss 8-9; Allen Mem. Supp. Mot. Dismiss 7; Klain Mem. Supp. Mot. Dismiss 7-8; Ray Mem. Supp. Mot. Dismiss 7-8; White Mem. Supp. Mot. Dismiss 8-9). The first problem with this argument is that Defendants ground their argument on Kentucky state law qualified immunity principles when Harrison has asserted only federal claims against Defendants: "Qualified immunity standards are different under Kentucky and federal laws. The Court must apply Kentucky law to determine whether Defendants are entitled to immunity from state tort liability and apply federal law when assessing immunity for federal law claims." *Funke v. Coogle*, No. 3:11-CV-310-H, 2013 WL 209602, at *2 (W.D. Ky. Jan. 17, 2013) (citing *Lexington-Fayette*

*Urban Cty. Gov't*, No. 06-299-JBC, 2007 WL 101862, at *4 (E.D. Ky. Jan. 10. 2007); *King v. Taylor*, 694 F.3d 650, 662-64 (6th Cir. 2012)).  Couching their entire argument for dismissal of Harrison's federal law claims on state law qualified immunity grounds is wholly lacking in merit.

The second problem with Defendants' qualified immunity argument is that the Court has previously rejected it; Defendants rehash almost word for word the same arguments made in previous motions to dismiss that were overruled.  *Compare* (Conrad Mem. Supp. Mot. Dismiss 8-9; Allen Mem. Supp. Mot. Dismiss 7; Klain Mem. Supp. Mot. Dismiss 7-8; Ray Mem. Supp. Mot. Dismiss 7-8; White Mem. Supp. Mot. Dismiss 8-9), *with* (Defs.' Mem. Support Mot. Dismiss 10-11; Def.'s Mem. Supp. Mot. Dismiss 7-8); *see* (Mem. Op. & Order 7-8).  Because Defendants have not raised new grounds for the application of qualified immunity, their previously rejected arguments will be denied here as well.

    2. ***Sufficiency of Pleaded Facts***

Defendants also attack the sufficiency of Harrison's claims on the alleged facts as pleaded against them in her Complaint.  Defendants' arguments change slightly as they relate to Harrison's specific claims.

    a. **Denial of Constitutional Right of Access to the Courts**

As it pertains to Harrison's Section 1983 claim for a violation of her right of access to the courts, Defendants try to minimize their involvement with the events giving rise to this case.  Conrad argues that "[t]he only connection Chief Conrad is alleged to have in this matter in that Plaintiff's mom requested he reopen a four-year-old case." (Conrad Mem. Supp. Mot. Dismiss 3-5).  Allen and Klain both argue that the only connection that they are alleged to have in this matter "is that Plaintiff's mom requested information through open records three years [after Harrison's assault] and does not believe [that Allen and Klain] responded correctly." (Allen Mem. Supp.

7

Mot. Dismiss 3-5; Klain Mem. Supp. Mot. Dismiss 3-5). Ray argues that "[t]he only connection [he] is alleged to have in this matter is that eight years after th[e assault] incident he allegedly did not authorize testing after he was instructed to do so." (Ray Mem. Supp. Mot. Dismiss 3-5). Finally, White argues that "[t]he only connection Chief White is alleged to have in this matter is that Woolridge elected to take an early retirement." (White Mem. Supp. Mot. Dismiss 3-5).

Similar arguments were made in previous motions to dismiss and were addressed and rejected by this Court in its prior order. (Defs.' Mem. Supp. Mot. Dismiss 3-6; Def.'s Mem. Supp. Mot. Dismiss 3-4; Mem. Op. & Order 8-10). As this Court previously stated, Defendants' attempts to minimize their involvement with the events giving rise to this case "oversimplifies Harrison's allegations:"

> In this case, Harrison avers it was the LMPD's obstruction and wholesale failure to investigate that prevented her from having any idea whatsoever regarding the identity of her attacker. If Defendants did indeed conspire in the manner alleged by Harrison, one could draw a plausible inference that the conspiracy and refusal to investigate created an obstruction that prevented Plaintiff from finding redress for her injury in state court.

(Mem. Op. & Order 9-10). Like before, Harrison's general allegation that LMPD as a whole sought to obstruct her ability to redress her injuries, buttressed by her identification of specific acts taken by Conrad, Allen, Klain, Ray, and White during her attempts to investigate her case, suffices to establish "a claim [for denial of access to the courts] against White and the other named Defendants" that survives Defendants' motions to dismiss. (Mem. Op & Order 10).

### b.   Sex-Based Equal Protection and Section 1985(3) Claims

In its prior memorandum opinion and order, the Court construed Counts II and III of Harrison's initial Complaint as having asserted three claims: (1) a general equal protection claim not based on Harrison belonging to a protected class; (2) an equal protection claim based specifically on Harrison's race; and (3) a Section 1985(3) claim based specifically on Harrison's

8

race.  (Mem. Op. & Order 10-13).  Although allowing her general equal protection claim to survive, the Court dismissed Harrison's race-based equal protection and Section 1985(3) claims because "[b]eyond conclusory statements when outlining the counts asserted, Harrison has not identified a single fact that allows for a plausible inference that the alleged misconduct was racially motivated" and "while Harrison offers multiple allegations of racial animus, none of them alleges any specific facts to support the conclusion."  (Mem. Op. & Order 12).  In her First Amended Complaint, Harrison again alleges a general equal protection claim, in addition to having now alleged sex, instead of race, based equal protection and Section 1985(3) claims.  (First Am. Compl. ¶¶ 117-132).  As it pertains to Harrison's general equal protection claim, Defendants, once again, rehash arguments that have previously been rejected.  *Compare* (Conrad Mem. Supp. Mot. Dismiss 5-6; Allen Mem. Supp. Mot. Dismiss 5-6; Klain Mem. Supp. Mot. Dismiss 5-6; Ray Mem. Supp. Mot. Dismiss 5-6; White Mem. Supp. Mot. Dismiss 5-6), *with* (Defs.' Mem. Support Mot. Dismiss 4-5; Def.'s Mem. Supp. Mot. Dismiss 6-7); *see* (Mem. Op. & Order 10-11).  Defendants have offered no reason to distinguish their present arguments from the Court's earlier rulings on this issue.

Regarding Plaintiff's sex-based equal protection and Section 1985(3) claims, unlike her race-based equal protection and Section 1985(3) claims in her initial Complaint, Harrison has sufficiently alleged "that a discrimination of some substance has occurred which has not occurred against other individuals who were similarly situated."  *Hall v. Callahan*, 727 F.3d 450, 457 (6th Cir. 2013) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  As a sister court has explained:

> The Sixth Circuit has held that a plaintiff fails to plead an equal protection claim for gender discrimination where the pleadings simply allege that the plaintiff is a woman but fail to allege that the defendant acted with a discriminatory purpose or that similarly situated males received more favorable treatment.

*Morreim v. Univ. of Tenn.*, No. 12-2891-STA-DKV, 2013 WL 5673619, at *17 (W.D. Tenn. Oct. 17, 2013) (citing *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011); *Brooks v. Knapp*, 221 F. App'x 402, 408-09 (6th Cir. 2007)).

Harrison here pleads that the type of rape kit she was administered is administered by LMPD only to female, not male, rape victims. (First Am. Compl. ¶ 4). Harrison also pleads that her rape kit was one of 3000 untested rape kits that a 2015 statewide audit revealed. (First Am. Compl. ¶ 87). Although Harrison did not explicitly state that all 3000 of those untested rape kits were female rape kits, when considering her other pleaded facts in conjunction with the aforementioned, that is what she implies: Harrison alleges that the LMPD and its employees systematically had a history of tampering with, concealing, compromising, and/or destroying a female rape victims' rape kits. (First Am. Compl. ¶¶ 67-68). At this point, Harrison has sufficiently alleged that the LMPD and its employees treat male rape victims more favorably than female rape victims like Harrison, carried out through the various roles that each Defendant played at the LMPD, by prioritizing and employing better investigative methods to male rape victim cases. (First Am. Compl. ¶¶ 4-5, 72-80, 82-83, 85-91).

The only remaining argument Defendants make is that Harrison has pleaded insufficient facts to suggest the existence of a conspiracy to be able to proceed on her Section 1985(3) conspiracy claim. (Conrad Mem. Supp. Mot. Dismiss 6-7; Allen Mem. Supp. Mot. Dismiss 6-7; Klain Mem. Supp. Mot. Dismiss 6-7; Ray Mem. Supp. Mot. Dismiss 7; White Mem. Supp. Mot. Dismiss 7). Defendants' argument here is essentially a reiteration of their arguments previously

overruled that their involvement in the totality of the events giving rise to Harrison's action was minimal. As previously discussed, Harrison has sufficiently pleaded an officewide conspiracy on the part of the LMPD to deny equal treatment to female rape victims and has identified the individual role of each Defendant in that conspiracy.

For these reasons, Harrison's gender-based equal protection and Section 1985(3) claims will survive.

### c. *Monell* Claims

Unlike her initial Complaint, Harrison asserted *Monell* claims against White and Conrad in her First Amended Complaint. (First Am. Compl. ¶¶ 133-138). In their motions to dismiss, Conrad and White made two arguments for the dismissal of these claims. (Conrad Mem. Supp. Mot. Dismiss 7-8; White Mem. Supp. Mot. Dismiss 7-8). Recognizing the shortcomings of her claims, Harrison has since withdrawn her *Monell* claims as pleaded in her First Amended Complaint and seeks leave to file a Second Amended Complaint that asserts the same *Monell* claims but which purports to correct these shortcomings. (Pl.'s Resp. Defs.' Mots. Dismiss 6, DN 73; Pl.'s Mot. Leave File Second Am. Compl. ¶¶ 11-13, DN 74; Second Am. Compl. ¶¶ 133-146, DN 74-1). Conrad and White assert that Harrison's proposed Second Amended Complaint does not actually salvage her *Monell* claims. (Defs.' Resp. Pl.'s Mot. Leave File Second Am. Compl. 2-3, DN 77).

The first infirmity Conrad and White point to is that they are sued in their individual capacities while a *Monell* claim only affords municipality, not individual, liability. (Conrad Mem. Supp. Mot. Dismiss 7-8; White Mem. Supp. Mot. Dismiss 7-8); *see Phillips v. City of Cincinnati*, No. 1:18-cv-541, 2019 WL 2289277, at *5-6 (S.D. Ohio May 29, 2019) ("[T]he raison d'etre of *Monell* is to impose liability on a *municipality* under certain circumstances—not individuals.");

11

*see also Amory v. Katz*, No. 3:15-cv-01535 (VAB), 2016 WL 7377091, at *5 (D. Conn. Dec. 19, 2016) ("*Monell* does not apply to . . . individuals who are sued in their individual capacity . . . ."). Harrison has indeed cured this defect by suing Conrad and White in their official capacities with respect to her *Monell* claims.[2] (Pl.'s Resp. Defs.' Mots. Dismiss 6; Pl.'s Mot. Leave File Second Am. Compl. ¶ 5; Pl.'s Resp. Defs.' Obj. Pl.'s Mot. Leave File Second Am. Compl. 4 n.1, DN 79); *see Funke*, 2013 WL 209602, at *3 (suit against Elizabethtown police officers in their official capacities "is the same as suing" the City of Elizabethtown).

The second infirmity Conrad and White claim is the same minimalization argument they have maintained throughout their motions to dismiss and that has been consistently rejected—that Conrad and White had little to no involvement with the events giving rise to Harrison's claims. (Conrad Mot. Dismiss 7-8; White Mot. Dismiss 7-8; Defs.' Reply Pl.'s Resp. Defs.' Mots. Dismiss 3, DN 75; Defs.' Obj. Pl.'s Second Am. Compl. 2-3, DN 77). Harrison has alleged that Conrad and White, among other things: (1) disregarded, ignored, and/or covered up allegations of police misconduct; (2) allowed violations of police policy, including those intended to protect female rape victims and ensure a legitimate investigation of their criminal cases; and (3) allowed a historical pattern of tampering, concealing, compromising and/or destroying female rape victims' rape kits while they were in the possession and control of LMPD. (Second Am. Compl. ¶ 135). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520

---

[2] It is unclear whether Harrison is also attempting to maintain *Monell* claims against Conrad and White individually, but that does not appear to be the case. In any event, *Monell* claims against Conrad and White in their individual capacities would be improper. *See Phillips*, 2019 WL 2289277, at *5-6; *Amory*, 2016 WL 7377091, at *5.

U.S. 397, 404 (1997) (citations omitted).  Harrison has sufficiently alleged, for the purpose of allowing the filing of her Second Amended Complaint, that Conrad and White, both former police chiefs of the LMPD, participated in or allowed a widespread LMPD practice of covering up allegations of police misconduct and refusing to investigate or intentionally botching female rape victim cases so as to establish *Monell* liability.  *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) ("A plaintiff can make a showing of an illegal policy or custom by demonstrating . . . the existence of a custom of tolerance or acquiescence of federal rights violations." (citation omitted)).

Other than the arguments just addressed, the defendants do not otherwise oppose Harrison's filing of a Second Amended Complaint.  *See* (Defs.' Resp. Pl.'s Mot. Leave File Second Am. Compl. 1-3); Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave [to a party to amend a pleading] when justice so requires."); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason . . . the leave sought should, as the rule require by 'freely given.'").[3]  Harrison will therefore be granted leave to file her Second Amended Complaint.[4]

---

[3] Although the Court could have simply granted Harrison's motion for leave to file a Second Amended Complaint, thus mooting all of the defendants' motions to dismiss, because the motions to dismiss were fully briefed and the defendants' arguments mostly applied in the same way to the First and Second Amended Complaints, judicial economy dictated that the defendants' motions to dismiss should be addressed.

[4] The only other substantive change to her pleading is Harrison's clarification of the identity of two of the defendants in this case, to which the defendants have not objected.  (Pl.'s Mot. Leave File Second Am. Compl. ¶¶ 1-5).

## V. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Defendants' Motions to Dismiss (DNs 55, 61, 62, 63, 64, 65) are **DENIED**.

2. Plaintiff's Motion to File a Second Amended Complaint (DN 74) is **GRANTED**.

Greg N. Stivers, Chief Judge
United States District Court

July 6, 2020

cc: counsel of record